**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2236-23

C.W.,[1]

      Plaintiff-Appellant,

v.

ROSELLE BOARD OF
EDUCATION,

      Defendant-Respondent,

and

NEW JERSEY BOARD
OF EDUCATION,

      Defendant,

and

ROSELLE BOARD
OF EDUCATION,

      Third-Party Plaintiff,

v.

GILBERT YOUNG, JR.,

      Third-Party Defendant.

<table>
<tr><td>APPROVED FOR PUBLICATION<br>January 15, 2026<br>APPELLATE DIVISION</td></tr>
</table>

---

[1] We use initials to protect plaintiff's privacy.  R. 1:38-3(c)(9).

Argued October 22, 2025 – Decided January 15, 2026

Before Judges Currier, Smith and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-0153-20.

J. Silvio Mascolo argued the cause for appellant (Rebenack, Aronow & Mascolo, LLP, attorneys; J. Silvio Mascolo, of counsel and on the briefs).

Roshan D. Shah argued the cause for respondent (Shah Law Group, LLC, attorneys; Roshan D. Shah and Todd S. McGarvey, of counsel and on the briefs; Valentina Recchia and Edward Brazaitis, on the briefs).

The opinion of the court was delivered by

CURRIER, P.J.A.D.

In this matter, before us for a second time, we consider whether the Legislature's amendment to a statute, while the second appeal was pending, is applicable and suffices to vacate the trial court's grant of summary judgment to defendant Roselle Board of Education (RBOE). Plaintiff alleged he was sexually abused by an employee of RBOE. The court granted summary judgment because plaintiff could not establish he incurred the $3,600 monetary threshold of medical expenses to seek relief under the Tort Claims Act (TCA), N.J.S.A. 59:9-2(d). During the pendency of the appeal, the Legislature amended the TCA eliminating the monetary threshold in sexual abuse cases.

<u>P.L.</u> 2025, c. 29. The amendment stated it was effective immediately. Plaintiff now urges this court to apply the amendment retroactively to his matter and overturn the summary judgment order.

Because the Legislature did not explicitly state the amendment was to apply retroactively and without clear legislative intent, New Jersey law strongly favors the prospective treatment of newly enacted laws and amendments. Therefore, the trial court correctly determined, based on the statute in effect at the time, that plaintiff's claims were barred as failing to meet the monetary threshold. We affirm.

I.

Plaintiff, born in 1988, alleges he was sexually abused as a minor by third-party defendant Gilbert Young, Jr. who was employed by RBOE as a middle school math teacher. Young was plaintiff's math teacher in 2001-2002. Plaintiff does not allege that any sexual abuse occurred while he was in middle school.

In 2004-2005 plaintiff was in high school but returned frequently with friends to the middle school to visit teachers, including Young. During one of these visits, Young asked plaintiff if he needed help with math and plaintiff said yes. Thereafter, plaintiff began walking to the middle school at the end of

3

the day to work with Young. Sometimes Young would drive plaintiff home after helping him with his homework.

Plaintiff alleges two specific incidents of abuse that took place off school property during 2004-2005. The first incident occurred in the fall of 2004 when Young was driving plaintiff home and stopped in a park. There, Young proceeded to kiss and grope plaintiff in the car. Specifically, plaintiff stated that "[w]hile inside his car, [Young] started to caress [plaintiff's] thigh up to [his] genitals. He then grabbed [plaintiff's] left hand and guided [him] to touch [Young] in the same way. [Young] then kissed [plaintiff] on [his] lips." Plaintiff stated that after the incident, Young told plaintiff "not [to] tell anyone," because he could lose his teaching license. Plaintiff said the incident made him uncomfortable, and that he "wanted it to be over," and "[i]t felt awful."

Subsequently, plaintiff and Young arranged to meet in the early morning hours of January 1, 2005. Young picked plaintiff up at 6:00 a.m. and took him to a motel where Young sexually abused him both orally and anally.

Over two years later, in 2007, plaintiff reported the abuse to the high-school nurse. After an investigation and administrative proceedings, Young's position and tenure were terminated.

4

II.

In 2020, plaintiff filed a complaint against RBOE[2] alleging violations of the New Jersey Child Sex Abuse Act (CSAA), N.J.S.A. 2A:61B-1, negligence, intentional infliction of emotional distress (IIED), negligent infliction of emotional distress (NIED), and sought compensatory and punitive damages. On motion of RBOE, the court dismissed the CSAA count and claim for punitive damages. RBOE filed an answer and third-party complaint against Gilbert Young, Jr.

In his answers to interrogatories, plaintiff stated he sustained psychological injuries following the abuse, including depression, anxiety, and difficulty forming romantic relationships. However, he did not seek any medical treatment, counseling, or therapy for the abuse at the time, and did not incur any medical expenses related to it.

During the course of the litigation, plaintiff submitted an expert report from Dr. Jon Conte, Ph.D., who evaluated plaintiff in 2021. Dr. Conte found that plaintiff "present[ed] with a complex trauma history with significant adversities over most of his life," and had "significant vulnerabilities prior to coming under the influence of Y[oung]." Dr. Conte reviewed plaintiff's self-

---

[2] Plaintiff also sued the New Jersey Board of Education. The court granted it summary judgment in March 2020. That order has not been appealed.

A-2236-23

reported testing results and found the "testing indicates significant current difficulties with identity, relatedness (including distrust of others, social isolation), affect regulation, and depression." In conclusion, Dr. Conte stated C.W.'s "vulnerabilities rendered the impact of the abuse by Y[oung] more significant and are a contributing factor to his subsequent functioning."

RBOE moved for summary judgment. The court granted the motion in part, dismissing the IIED claim with prejudice, but allowing plaintiff to proceed with his negligence and NIED claims. As we stated in our first opinion, in considering the application of the TCA's verbal threshold, the trial court "found that because plaintiff 'was sexually abused as a minor, he [was] entitled to a presumption of permanent and/or substantial injury for purposes of the TCA.' The court did not address the medical expenses limitation." C.W. v. Roselle Bd. of Educ., 474 N.J. Super. 644, 651 (App. Div. 2023) (alteration in original).

RBOE moved for reconsideration, arguing it was entitled to summary judgment because plaintiff had not met the required medical expenses monetary threshold. The court partially granted the motion, finding plaintiff could not seek damages for pain and suffering under the TCA because he had not incurred $3,600 in related medical expenses and could not establish an objective, substantial permanent injury as required by the statute. However,

the court allowed the common-law negligence and NIED claims to proceed, finding there were genuine disputes regarding the existence of permanent psychological injuries and causation, and certain "other damages" might still be available.

We granted plaintiff leave to file an interlocutory appeal and affirmed the court's ruling that plaintiff could not pursue pain and suffering damages as he had not incurred $3,600 in related medical expenses, however, he could pursue other damages. Ibid. We further found plaintiff's expert opinion detailing future treatment costs was an invalid net opinion. Ibid. However, we reversed the trial court's grant of summary judgment on the CSAA claims and remanded the matter for further proceedings. Id. at 651 n. 2. The Supreme Court denied plaintiff's subsequent motion for leave to appeal. C.W. v. Roselle Bd. of Educ., 254 N.J. 172 (2023).

III.

Back before the trial court, RBOE moved to bar plaintiff from seeking non-economic damages. The court denied the motion without prejudice, finding plaintiff was not seeking nominal or economic damages, but rather damages for loss of enjoyment of life.

Thereafter, RBOE moved again for summary judgment, arguing that all of plaintiff's non-economic damages were, as a matter of law, subsumed within

7

"pain and suffering" under the TCA, and thus barred. In response, plaintiff argued he was entitled to non-economic damages for disability, impairment, and loss of enjoyment of life.

The trial court granted RBOE summary judgment in March 2024, finding plaintiff's claimed damages for disability, impairment, and loss of enjoyment of life were, under established New Jersey law, part of pain and suffering within the meaning of the TCA, and since plaintiff could not meet the monetary threshold, he could not pursue those damages.

Plaintiff appealed. As stated, during the pendency of the appeal, the Legislature amended the TCA in March 2025 to eliminate the verbal and monetary thresholds in sexual abuse cases. See N.J.S.A. 59:2-1.3(a)(2); N.J.S.A. 59:9-2(d). The legislation states the threshold amendment "shall take effect immediately." P.L. 2025, c. 29.

IV.

In its initial merits brief, plaintiff contended the court erred in precluding him from pursuing damages for disability, impairment and loss of enjoyment of life as they are separate and distinct from damages for pain and suffering. After the legislative amendments to the TCA, we permitted supplemental briefing, and plaintiff asserted the amended TCA applied to his case under the time-of-decision rule as his matter was pending appeal at the

time of its enactment. Alternatively, plaintiff contended the amendment should apply retroactively to his claims.

A.

We begin with the applicability of the amended TCA to plaintiff's claims. Plaintiff relies on Kruvant v. Mayor & Council Township of Cedar Grove, 82 N.J. 435, 440 (1980), to support his argument regarding the time-of-decision rule, citing to the decision's language that states: "The purpose of the principle [of applying the legislative intent of a statute's application] is to effectuate the current policy declared by the legislative body[,] a policy which presumably is in the public interest. By applying the presently effective statute, a court does not undercut the legislative intent." However, plaintiff does not include the sentence preceding the one cited which reads: "It is a well-established principle that an appellate court on direct review will apply the statute in effect at the time of its decision, at least when the legislature intended that its modification be retroactive to pending cases." Ibid. (emphasis added). Therefore, the rule is only meant to apply when the legislature intends for retroactive application.

In addition, "[a]pplication of the time-of-decision rule . . . 'is not automatic'; a court must take into account equitable considerations, and the outcome depends upon a balance of the equities . . . ." Eastampton Ctr., LLC

v. Plan. Bd. of Twp. of Eastampton, 354 N.J. Super. 171, 197 (App. Div. 2002) (quoting Pizzo Mantin Grp. v. Twp. of Randolph, 137 N.J. 216, 235 (1994)). "The ultimate objective is fairness . . . ." Tremarco Corp. v. Garzio, 32 N.J. 448, 457 (1960). Therefore, a balance "must be struck" between the interested parties. Ibid.

In balancing the equities, a court should consider the extent to which a party relied on the prior law. Ibid.; see also Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 387 (2016) ("[A]lthough everyone is presumed to know the law, no one is expected to anticipate a law that has yet to be enacted . . . ."); Cruz v. Cent. Jersey Landscaping, Inc., 195 N.J. 33, 45 (2008) (new laws should be applied prospectively for reasons of fairness and due process); Gibbons v. Gibbons, 86 N.J. 515, 522 (1981) ("It is a fundamental principle of jurisprudence that retroactive application of new laws involves a high risk of being unfair.").

Balancing the equities here, this litigation has ensued for over five years. The trial court has granted RBOE summary judgment twice, grounding its analysis in the then-existing longstanding statute and decisional law regarding a monetary threshold for medical expenses as a requisite for recovering damages against a public entity. In addition, there was a prior appellate decision which relied on the previous version of the law. See generally C.W.,

10

474 N.J. Super. at 646-54. Clearly, the parties and courts properly adhered to the statute enacted more than fifty years ago. Moreover, to permit a unilateral sudden change under the time-of-decision rule without a retroactivity analysis would result in unfairness and a violation of defendant's due process.

Considering these legal principles, we are satisfied the time-of-decision rule does not apply. We now turn to retroactivity.

Plaintiff's appeal was still pending at the time the amendment was enacted. However, there is no express language indicating "the legislature intended that its modification be retroactive to pending cases." Kruvant, 82 N.J. at 440. Moreover, "[s]ettled rules of statutory construction favor prospective rather than retroactive application of new legislation" in order to avoid unfair outcomes. Pisack v. B & C Towing, Inc., 240 N.J. 360, 370 (2020) (quoting James v. N.J. Mfrs. Ins., 216 N.J. 552, 563 (2014)).

As we have previously noted, "[o]ur Supreme Court has consistently held that an amendment that is to take effect immediately is to be applied only prospectively." State v. Rosado, 475 N.J. Super. 266, 276 (App. Div. 2023); see also Pisack, 240 N.J. at 371 (explaining that "the Legislature provided that the 2018 amendatory legislation 'shall take effect immediately.' . . . Those 'words bespeak an intent contrary to, and not supportive of, retroactive application.'") (quoting Cruz, 195 N.J. 33 at 48).

We employ a two-part test to determine if the amended statute should apply retroactively. We consider "whether the Legislature intended to give the statute retroactive application"; and "whether retroactive application of that statute will result in either an unconstitutional interference with vested rights or a manifest injustice." James, 216 N.J. at 563 (quoting In re D.C., 146 N.J. 31, 50 (1996)). "Both questions must be satisfied for a statute to be applied retroactively." Johnson, 226 N.J. at 387.

In addressing the first question, a court considers if: (1) the Legislature explicitly or implicitly expresses an intent that a law be applied retroactively; (2) an amendment is ameliorative or curative; or (3) if the parties' expectations warrant retroactive application. Ibid.

"[C]ourts generally 'enforce newly enacted substantive statutes prospectively, unless [the Legislature] clearly expresses a contrary intent'" for retroactive application. Maia v. IEW Constr. Grp., 257 N.J. 330, 350 (2024) (second alteration in original) (emphasis omitted) (quoting In re J.D-F., 248 N.J. 11, 22 (2021)). "The Legislature may convey its intent to apply a statute retroactively by expressing it explicitly 'in the language of the statute or in the pertinent legislative history,' or impliedly, by rendering it necessary 'to make the statute workable or to give it the most sensible interpretation.'" Id. at 350-51 (quoting Gibbons, 86 N.J. at 522).

A-2236-23

There is no indication the Legislature intended to give the amended statute retroactive application. First, there is no express language indicating such an intent. Johnson, 226 N.J. at 387. Second, the amendment is not ameliorative or curative. "[W]hen determining whether a statute or amendment is ameliorative or curative, courts look to whether the statute or amendment 'is designed merely to carry out or explain the intent of the original statute.'" Maia, 257 N.J. at 351 (quoting Johnson, 226 N.J. at 388). A statute or amendment is curative when "its purpose is 'to remedy a perceived imperfection in or misapplication of a statute and not to alter the intended scope or purposes of the original act.'" Johnson, 226 N.J. at 388 (quoting Nelson v. Bd. of Educ., 148 N.J. 358, 370 (1997)).

The amendment altered the longstanding scope of the TCA by removing a procedural bar for a specific class of plaintiffs, which permitted those litigants to pursue a claim against a public entity previously closed to them. The amendment expanded the limitations on the immunity afforded to the public entity under the TCA, rather than fixing a misapplication of the TCA's original purpose, particularly considering that a prior amendment in 2000 raised the dollar figure of the monetary threshold. P.L. 2000, c. 126, § 32.

A-2236-23

Plaintiff relies on the following Assembly Judiciary Committee Statement issued on October 21, 2024, to support his argument that the Legislature intended the amended to be curative:

> This bill establishes that the limitation against recovery also does not apply to an action at law for an injury resulting from the commission of sexual assault, a prohibited sexual act as defined in N.J.S.A.2A:30B-2, sexual abuse as defined in N.J.S.A.2A:61B-1, or any other crime of sexual nature.
>
> COMMITTEE AMENDMENTS: The committee amended the bill to further clarify that the recovery for pain and suffering as a result of a sexual offense is separate and distinct from recovery for permanent loss of a bodily function, permanent disfigurement, or dismemberment where the medical treatment expenses are in excess of $3,600.
>
> [(Emphasis added).]

The emphasized language simply reiterates the plain language of the amendment. Recovery against a public entity for pain and suffering damages resulting from a sexual offense are no longer subject to the TCA's monetary threshold. The statement does not indicate the Legislature amended the statute to cure a perceived imperfection in the TCA. It is addressing the ramifications of a new act, the Child Victims Act, N.J.S.A. 59:2-1.3, when it is considered in tandem with the TCA.

14

Third, the parties' expectations do not warrant retroactive application. If legislative intent is not clear concerning retroactivity, then "a court will look at the controlling law at the relevant time and consider the parties' reasonable expectations as to the law." Johnson, 226 N.J. at 389. "An expectation of retroactive application 'should be strongly apparent to the parties in order to override the lack of any explicit or implicit expression of intent for retroactive application.'" Ibid. (quoting James, 216 N.J. at 573). As noted, the parties proceeded through the years of this litigation relying on the five decades of decisional law regarding the TCA's monetary threshold and its application to emotional distress damages as being encompassed within the category of pain and suffering damages.

Moreover, in Maia, 257 N.J. at 342, our Supreme Court discussed the United States Supreme Court's decision in Landgraf v. USI Film Products, 511 U.S. 244, 247 (1994), regarding retroactivity. The Court explained that in Landgraf, the United States Supreme Court "noted that the 'application of new statutes passed after the events in suit is unquestionably proper in many situations,' such as statutes that affect the 'propriety of prospective relief'; 'statutes conferring or ousting jurisdiction'; and '[c]hanges in procedural rules.'" Maia, 257 N.J. at 343 (alteration in original) (quoting Landgraf, 511 U.S. at 273-75). However, the Maia Court acknowledged that the United

States Supreme Court "distinguished such situations from statutes that 'would operate retroactively'—i.e., statutes that 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" Maia, 257 N.J. at 343 (quoting Landgraf, 511 U.S. at 280). Applying the amendment retroactively would impair RBOE's rights and expose it to a type of liability not in place when these events occurred almost twenty years ago and when the complaint was filed five years ago. Our analysis leads to the conclusion that the amended statute should not be applied retroactively.

B.

As a result, we turn to plaintiff's contentions regarding the trial court's order granting RBOE summary judgment and not permitting plaintiff to assert damages for disability, impairment and loss of enjoyment of life. We review the trial court's grant or denial of a motion for summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73 (2022). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. of Am., 142 N.J. 520, 540 (1995).

A-2236-23

In our prior decision, we found plaintiff was precluded from seeking pain and suffering damages under N.J.S.A. 59:9-2(d) since he could not meet the monetary threshold.  C.W., 474 N.J. Super. at 653.  However, he was "not foreclosed from other available damages under the statute."  Ibid.  At the time, plaintiff had not conceded he had no grounds for economic relief.

Upon return to the trial court, RBOE moved for summary judgment on the two remaining counts—negligence and NIED.  For the first time, plaintiff stipulated he was not seeking economic or nominal damages.  However, he asserted he could recover non-economic damages for his emotional distress under the categories of disability, impairment and loss of enjoyment of life. The trial court found that our Supreme Court has already addressed the issue, including in Ayers, Nieves, and Collins,[3] and concluded that psychological injury claims are encompassed within the pain and suffering damages category, and thus, subject to the TCA's monetary and permanent loss threshold.  Because plaintiff could not satisfy the monetary threshold required at the time to pursue a claim for pain and suffering, the trial court again granted RBOE summary judgment.

---

[3] Ayers v. Jackson Twp., 106 N.J. 557 (1987); Nieves v. Off. of the Pub. Def., 241 N.J. 567 (2020); Collins v. Union Cnty. Jail, 150 N.J. 407 (1997).

A-2236-23

We agree with the trial court's reasoning and conclusion. Plaintiff seeks non-economic damages for emotional distress claims against a state public entity. This requires compliance with the TCA, which, at the time, mandated a monetary threshold to pursue such claims.

Further, in J.H. v. Mercer County Youth Detention Center, 396 N.J. Super. 1 (App. Div. 2007), we considered the applicability of the TCA to a claim brought by a minor who alleged he was sexually abused in a detention facility resulting in a diagnosis of post-traumatic stress disorder. We concluded that J.H. needed to present evidence of both a permanent injury and the $3,600 medical expense threshold to withstand the grant of summary judgment to the defendant. Id. at 20.

As stated, in 2019, the Legislature amended various statutes, including the CSAA and TCA, with the goal of "increas[ing] the ability of victims of sexual abuse to pursue justice through the court system." W.S. v. Hildreth, 252 N.J. 506, 524 (2003) (quoting Governor's Statement to S. 477 1 (May 13, 2019)) (internal quotation marks omitted). "To achieve that goal, the Legislature amended the statutes of limitations for filing civil claims of sexual abuse, the notice provisions of the TCA, and the liability of passive sexual abusers under the [CSAA]." J.H. v. Warren Hills Bd. of Educ., 481 N.J. Super. 536, 544 (App. Div. 2025). The Legislature also narrowed the scope of

substantive immunity under the TCA, so that immunity from civil liability would "not apply to an action at law for damages" resulting from sexual abuse "which was caused by a willful, wanton or grossly negligent act of the public entity or public employee," or, for acts committed against a minor, "which [were] caused by the negligent hiring, supervision, or retention of any public employee." N.J.S.A. 59:2-1.3(a).

However, despite these prominent changes, the Legislature did not substantively amend the monetary threshold requirement or expand the viable claims that were not subject to it. On the contrary, it increased the dollar amount of required medical expenses.

We are also unpersuaded by plaintiff's contention that Eyoma v. Falco, 247 N.J. Super. 435 (App. Div. 1991), permits him to pursue non-economic damages for loss of enjoyment of life, apart from a pain and suffering claim. In Eyoma, the plaintiff was a patient who fell into a coma after surgery and later died. Id. at 439. After trial in the wrongful death action, the jury found the defendant nurse liable and awarded damages for loss of enjoyment of life. Id. at 442-44. We affirmed the award of the category of damages, stating that "damages for loss of enjoyment of life may be awarded as part of damages for the total disability and impairment which exists when tortious injury causes one to be in a comatose or vegetative state." Id. at 453.

A-2236-23

Eyoma was not a case governed by the TCA and so did not involve the TCA monetary threshold. It permitted loss of enjoyment of life damages in the narrowest of circumstances: when pursued in a survival action by a plaintiff in a comatose state. Id. at 445-46. This court reinforced that "conscious suffering is the only proper basis for pain and suffering," and damages for pain and suffering were limited to "compensation alone." Id. at 451.

We decline to depart from our well-established law that plaintiff's claims of post-traumatic stress disorder and severe depression are considered as pain and suffering damages and fall within the limitations under N.J.S.A. 59:9-2(d). See Rocco v. N.J. Transit Rail Operations Inc., 330 N.J. Super. 320, 333-34 (App. Div. 2000) (finding that "a reading of [the] plaintiff's psychiatrist's report fails to disclose an opinion that [the] plaintiff is suffering from a substantial permanent psychological injury."). Prior to the statute's amendment, cases instituted under the TCA treated emotional damages claims as pain and suffering or economic damages subject to the monetary threshold.

As we conclude that the amended statute was not retroactive, and therefore does not apply to plaintiff's complaint, the court's grant of summary judgment for failure to meet the monetary threshold under the TCA is supported by the existing law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

20                                                    A-2236-23